WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-17-00163-TUC-CKJ |
| Plaintiffs, | **ORDER** |
| v. | |
| Kirstjen M. Nielsen, et al., | |
| Defendants. | |

## INTRODUCTION

In this matter, Plaintiffs allege that Defendants[1] have violated the National Environmental Policy Act (NEPA) and the Endangered Species Act (ESA), and request declaratory and injunctive relief. *See* Doc. 14 (First Amended Complaint) (also adding a claim pursuant to the Freedom of Information Act not material to this Order).

Specifically, Plaintiffs allege Defendants violated NEPA by failing to "further supplement its programmatic environmental impact statement for the southern border enforcement program." *See id.* at pg. 2. Plaintiffs further allege that Defendants violated ESA by failing to "undertake and complete consultation with the U.S. Fish and Wildlife Service regarding the impacts of the southern border enforcement program on threatened or endangered species, and their designated critical habitat." *See id.* at pg. 3 (alleging separate violations of Section 7(a)(1) & (2)).

---

[1] Named Defendants are: the Secretary of the Department of Homeland Security, the Department itself (DHS), its component agency U.S. Customs and Border Protection (CBP), and the acting CBP Commissioner.

Defendants assert that the Court lacks jurisdiction to adjudicate Plaintiffs' ESA claim, and have moved to dismiss the alleged NEPA and ESA violations for failure to state cognizable claims under either Act. *See* Doc. 22 (Partial Motion to Dismiss filed pursuant to Fed.R.Civ.P. 12). The Court will address each claim individually.

## THE NEPA CLAIM

Discretionary agency action that significantly affects the quality of our environment must comply with NEPA. 42 U.S.C. § 4332(C). Because NEPA does not provide a private cause of action, Plaintiffs can only challenge Defendants' actions — or lack thereof — under the Administrative Procedure Act (APA). *See Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1089 (E.D. Cal. 2009) ("NEPA contains no private right of action [therefore] NEPA claims must be brought under the APA") (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1179 (9th Cir. 2004)).

The APA allows an individual to challenge a final agency action in federal court if the individual has suffered a legal wrong because of that agency action. *See* 5 U.S.C. § 701, *et seq.* Final agency action includes an agency's failure to act when the action is legally required. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("a claim under [the APA] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*") (emphasis in original).

Here, Plaintiffs allege that Defendants have failed to undertake their legal duty to supplement a 2001 "supplemental programmatic" environmental impact statement (EIS). *See* Doc. 29 at pg. 24. An agency has a duty to supplement an EIS if: (1) it introduces "substantial changes" to a "proposed action"; or (2) "significant new circumstances or information" relevant to the environmental impacts of the agency's action have come to light and "major Federal action" will still occur. *See* 40 C.F.R. § 1502.9(c)(1)(i)-(ii); *see also Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1094 (9th Cir. 2013)) (quoting *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 73 (2004)).

Plaintiffs allege a number of events subsequent to the 2001 "supplemental programmatic" EIS (SPEIS) qualify as "substantial changes" and that new, significant

information requires Defendants to supplement the SPEIS. *See* Doc. 14. Specifically, "[s]ince approval of the 2001 SPEIS, border security appropriations, personnel, fencing and infrastructure, and surveillance technology have dramatically increased" [and these actions have resulted] in direct, indirect, and cumulative environmental impacts along the U.S.-Mexico border that were unaddressed or inadequately addressed in those prior programmatic NEPA documents." *Id.* at 45.

Further, Plaintiffs allege that "greatly improved scientific understanding of the conservation needs of borderland wildlife species, [and] new information regarding threatened and endangered species in the borderlands, including new and improved information regarding the presence and extent of those species and the designation of final or revised critical habitat within 50 miles of the U.S.-Mexico border under the Endangered Species Act for 27 of these species," have not been sufficiently considered by Defendants. *See id.* at pg. 46.

Defendants claim that Plaintiffs failed to allege what agency action will still occur based on the 2001 SPEIS and that the "southern border enforcement program" does not exist. *See* Doc 22 at pg. 2. Despite Defendants' claims, Plaintiffs' allegations are sufficient to allow the case to proceed to discovery to determine the relevant scope of the agency's activities with regards to the environmental information presented in the Complaint. *See Concerned About Trident v. Rumsfeld*, 555 F.2d 817, 825 (D.C. Cir. 1976) (describing the relevant inquiry into the alleged need for an environmental impact study as fact-based, rather than guided by "program 'labels'"); *see also*, *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (explaining that plaintiffs are entitled to discovery if they allege a "plausible" claim).

Taking the Complaint as true,[2] Defendants have plausibly taken a number of discrete, discretionary actions to enforce border security that have substantially changed

---

[2] *See, e.g.*, *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (Rawlinson, J.) (expounding the *Twombly/Iqbal* pleading standard as relying on "judicial experience and common sense to determine whether the factual allegations, which are assumed to be true, plausibly give rise to an entitlement to relief") (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

the agency's proposed action in the 2001 SPEIS, and that both significant new circumstances and information relevant to the environmental impacts of agency's actions have emerged. *See* Doc. 14 at pgs. 29-41; *see also*, *Churchill Cty. v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001) ("'Significance' is a function of the context and the 'intensity' of the action.") (citing 40 C.F.R. § 1508.27).

Defendants have not yet shown that they conducted a 'hard look' to determine whether they had a duty to supplement the 2001 SPEIS, or that the agency no longer uses the 2001 SPEIS to justify actions. *See Nevada v. Dep't of Energy*, 457 F.3d 78, 93 (D.C. Cir. 2006) (recognizing that an agency's actions must comport with the "rule of reason").

Defendants also claim that Plaintiffs' claims are time-barred, *see* Doc. 22 at pgs. 16–18; but because discovery has not yet taken place, the Court is unaware of when the agencies took any discrete actions (or determined not to act), or even what information the original EIS or SPEIS contain, to be able to determine the timing or scope of the relevant agency decisions.

Ultimately, discovery would help determine if Defendants have applied reasoned decision-making to the agency's final decision to not issue any supplement to the 2001 SPEIS, or if Defendants' border activities have received sufficient consideration pursuant to NEPA's requirements. *See*, *e.g.*, *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97–98 (1983) (acknowledging that a court's task is to "ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious").

### THE ESA CLAIMS

Plaintiffs have standing to bring a claim under the Endangered Species Act if they can generally allege a concrete injury caused by Defendants that the court can remedy. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that for purposes of adjudicating motions to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice"). Further, plaintiffs must provide written notice of the alleged violation at least 60 days before filing suit. *Klamath-Siskiyou Wildlands Ctr. v.*

*MacWhorter*, 797 F.3d 645, 647 (9th Cir. 2015) (describing "notice" as a "jurisdictional" bar) (citing 16 U.S.C. § 1540(g)(2)(A)(i)).

Here, Plaintiffs allege that Defendants have failed to initiate consultation with the U.S. Fish and Wildlife Service in regards to its continued southern border activities, and that this procedural failure has resulted in changes to the border environment that have negatively impacted the aesthetic, recreational, and scientific use of the area — an area that Plaintiffs frequent and have "date-certain plans to visit." *See* Doc. 29 at pgs. 33-35 (averring that equitable relief requiring consultation would remedy this procedural injury); *see also*, *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) (stating that plaintiffs "can establish 'injury in fact' by showing a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable"). At the motion to dismiss stage, the Court takes the non-movant's allegations as true, and Plaintiffs have attached Declarations that verify Defendants actions have, and will, negatively impact Plaintiffs' ability to visit the border lands for the express purpose of viewing, enjoying, and studying endangered and threatened species. *See* Doc. 29 (Attached Declarations of Raúl M. Grijalva, Michael J. Robinson, Harriet Shultis, and Randy Serraglio).

Defendants claim that Plaintiffs have failed to identify "any specific affirmative agency action allegedly requiring ESA consultation" in its written notice and that this failure creates a jurisdictional barrier. *See* Doc. 22 at pg. 29. However, notice satisfies due process requirements if Defendants "understood or reasonably should have understood the alleged violations." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (expressing that "the analysis turns on the 'overall sufficiency' of the notice," and that a plaintiff doesn't need to "list every specific aspect or detail of every alleged violation") (quoting *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002)).

Again, the adequacy of the notice does not turn on the exact name or label Plaintiffs have given to Defendants' actions, as long as Defendants can reasonably make

out the alleged grievance. At this point in the litigation, it is reasonable to conclude that Defendants — who in the past have relied upon programmatic actions along the "southern border" and, in 2012, created an EIS for its "northern border" activities — were sufficiently provided the opportunity to identify and address the violations alleged by Plaintiffs in the written notice. *See* Doc. 22 at pgs. 51-58 (detailing 27 species that have newly designated critical habitat areas within an explicitly described geographic zone that Defendants operate within and the general activities that threaten life in these areas).

However, although the Court has the jurisdiction to adjudicate Plaintiffs' claims pursuant to section 7(a)(2) for Defendants' alleged failure to consult with the U.S. Fish and Wildlife Service, Plaintiffs have not adequately alleged a violation pursuant to section 7(a)(1). Section 7(a)(1) requires that all federal agencies carry out programs for the "conservation of endangered species and threatened species," but it grants agencies the discretion on how to implement these programs. *See* 16 U.S.C. § 1536(a)(1). ESA requires that agencies carry out programs for environmental conservation, but it doesn't require that Defendants must have comprehensive programs to cover all activities. *See Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1418 (9th Cir. 1990) ("That some discretion should be allowed is also evident from the regulations promulgated under the Act.").

In this regard, Plaintiffs' notice and Complaint are inadequate. *See Defs. of Wildlife v. U.S. Fish & Wildlife*, 797 F. Supp. 2d 949, 953 (D. Ariz. 2011) (determining that the relevant inquiry is whether agency action has been so "insignificant" as to amount to "total inaction"). Plaintiffs do not allege that Defendants have no agency programs to protect endangered species or have never consulted with the U.S. Fish and Wildlife Service about how to fulfill its statutory duty. Rather, Plaintiffs allege that Defendants do not have any programs in place to protect *certain* species in a *specific* geographic region — a requirement absent from section 7(a)(1). 16 U.S.C. § 1536(a)(1); *see also*, *Nw. Envtl. Advocates v. U.S. E.P.A.*, 268 F. Supp. 2d 1255, 1273 (D. Or. 2003)

("The statute does not mention species-specific programs."). Therefore, Plaintiffs have not provided due notice or adequately alleged a viable claim for relief based on this section of ESA.

## Conclusion

Taking the Complaint as true, the factual allegations regarding the NEPA claim "plausibly give rise to an entitlement to relief." *Landers*, 771 F.3d at 641. Therefore, this cause of action should not be decided pursuant to Fed. R. Civ. P. 12(b)(6). Defendants created an EIS in 1994 that covered its activities along the "southern border" and supplemented that EIS in 2001. To the degree that agency actions continue in this geographic area without any subsequent compliance with environmental regulations, Plaintiffs have adequately alleged at this stage that Defendants have failed to take the required action to supplement the 2001 SPEIS or engage in required consultation with the U.S. Fish and Wildlife Service as mandated by NEPA and ESA.

Accordingly, IT IS ORDERED that Defendants' partial Motion to Dismiss (Doc. 22) is DENIED (in-part) and GRANTED (in-part). Only Plaintiffs' claim pursuant to section 7(a)(1) of the Endangered Species Act is DISMISSED.

Dated this 31st day of October, 2018.

Honorable Cindy K. Jorgenson
United States District Judge