**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) No. CIV 17-163-TUC-CKJ ) |
| Chad Wolf, *et al.*, | ) ) **ORDER** |
| Defendants. | ) ) |

Pending before the Court is the Motion to Complete the Administrative Record; Motion to Supplement the Administrative Record with Extra-Record Evidence; and Request for Judicial Notice ("Motion") (Doc. 50) filed by Plaintiffs Center for Biological Diversity and Raúl Grijalva (collectively, Plaintiffs or "CBD"). Defendants Chad Wolf;[1] the U.S. Department of Homeland Security; Mark A. Morgan;[2] and the U.S. Customs and Border Protection (collectively, Defendants or "the government") have filed a response (Doc. 54) and CBD has filed a reply (Doc. 57).

I. *Factual and Procedural History*

In approximately 1989, the Department of Defense ("DoD") created Joint Task Force Six ("JTF-6"), which "provid[ed] operational, engineering, and general support" to law

---

[1] Chad Wolf is substituted as the Acting Secretary of Homeland Security. *See* Fed.R.Civ.P. 25(d).

[2] Mark A. Morgan is substituted as the Acting Commissioner of U.S. Customs and Border Protection. *See* Fed.R.Civ.P. 25(d).

enforcement agencies that operate at United States borders. 59 Fed. Reg. 26,322-02 (May 19, 1994); Pub. L. No. 101–510.[3] As stated by the government:

> To address the potential impacts of JTF-6 actions and activities over a five-year period, the Department of Justice (then home of the Immigration and Naturalization Service ("INS") and United States Border Patrol ("USBP")) and DoD jointly prepared a 1994 Programmatic Environmental Impact Statement ("1994 PEIS"). [First Declaration of Jennifer DeHart Hass, DHS Environmental Planning and Historic Preservation Program Manager, ECF No. 49 ("First Hass Declaration")] ¶ 19. In 2001, DoD and INS updated the 1994 PEIS by completing a Supplemental Programmatic Environmental Impact Statement ("2001 SPEIS") focusing on the support activities JTF-6 would provide to USBP. 1st Hass Decl. ¶ 25.

Response (Doc. 54, p. 2). The 1994 PEIS and 2001 SPEIS analyzed the environmental impact of INS' "strategy for enforcement activities within a 50-mile corridor along the U.S./Mexico border," in order to allow INS to "gain and maintain control of the southwest border area" through "the prevention, deterrence, and detection of illegal activities." First Amended Complaint for Declaratory and Injunctive Relief ("FAC") (Doc. 14, ¶ 6).

Plaintiffs allege that, since the approval of the 2001 SPEIS, significant changes have occurred as to southern border enforcement including that the Department of Homeland Security ("DHS") was created and took over the border enforcement responsibilities of the former Immigration and Naturalization Service ("INS"); DHS was provided with significantly increased appropriations and aggressive mandates to secure the southern border; DHS through Customs and Border Protection ("CBP") has deployed thousands of new enforcement agents, increased off-road vehicle patrols, constructed or reconstructed thousands of miles of roads, erected hundreds of miles of border walls and fencing, and installed stadium lighting, radio towers, and remote sensors. Plaintiffs also allege this has resulted in environmental impacts far beyond those projected and analyzed in the 1994 PEIS and 2001 SPEIS. Plaintiffs further allege "significant new circumstances or information"

---

[3] "[I]n response to 9/11, in 2005 JTF-6 was renamed JTF-North and added counter-terrorism efforts to its mission. JTF-North, which remains part of DOD, continues to provide extensive operational, engineering, and construction support to DHS and CBP border enforcement efforts." Motion to Dismiss (Doc. 29, pp. 11-12 fn. 5). The Court will collectively refer to these task forces as JTF-6.

have arisen that are relevant to the environmental impacts of the action.

On January 25, 2017, President Donald J. Trump issued an Executive Order on "Border Security and Immigration Enforcement Improvements" ("Border Security E.O."), which *inter alia* announced the creation of a "secure, contiguous, and impassable physical barrier" along the entirety of the nearly 2,000 mile long U.S.-Mexico border, in order "to prevent illegal immigration, drug and human trafficking, and acts of terrorism." DHS Secretary John Kelly issued a February 17, 2017 memorandum directing specific actions to implement the Border Security E.O. and on March 17, 2017, DHS issued two Requests for Proposals ("RFP") – one for a "Solid Concrete Border Wall Prototype" and the second for "Other Border Wall Prototype."

In their FAC, Plaintiffs allege that, despite the passage of time and significant changed circumstances, DHS has failed to prepare a new supplement to its programmatic analysis, or to prepare a new programmatic analysis, in violation of the National Environmental Policy Act ("NEPA"). Defendants filed an Answer and submitted "an administrative record documenting CBP's project-and site-specific approach to NEPA and ESA compliance on the southern border." Response (Doc. 54, p. 3).

In their Motion, Plaintiffs request the Court to order Defendants to complete the administrative record, issue an Order allowing Plaintiffs to further supplement the lodged administrative record with limited and specifically identified extra-record materials, and take judicial notice of Federal Register documents. Briefly, Plaintiffs assert these requests should be granted because Defendants insistence that a southern border enforcement program does not exist does not negate or narrow Defendants' duty to prepare a complete administrative record by which the Court may adjudicate Plaintiffs' NEPA and ESA claims. The government asserts, however, that it does not have a single enforcement program for the entire southern border and Plaintiff's requests should be denied because they are attempting to present documents to support their impermissible programmatic challenge.

Further, Defendants assert some of the documents do not exist, as summarized in the First Hass Decl. and the Second Declaration of Jennifer DeHart Hass, DHS Environmental

Planning and Historic Preservation Program Manager (Doc. 54-3) ("Second Hass Decl.").
The Court accepts the statements of Hass and finds the documents do not exist.

II. *Judicial Review Under the Administrative Procedures Act ("APA"), NEPA, and ESA*

The parties agree NEPA claims are reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706 *et seq*. However, they disagree as to whether ESA claims are reviewed under the APA. Plaintiffs assert ESA citizen suits are not limited to an administrative record because the APA does not govern where there is an other adequate remedy in court, 5 U.S.C. § 704, and the ESA provides an independently authorized private right of action. *See e.g. W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) (because the ESA provides a citizen suit remedy, an other adequate remedy in court, the APA does not apply in such actions); *see also Washington Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) (the APA does not govern plaintiffs' claims because ESA independently authorizes a private right of action). Defendants disagree, however, and argue:

> The notion that *Kraayenbrink* silently overruled decades of Ninth Circuit precedent and contravened the Supreme Court—all without any discussion whatsoever—is not possible. In *Kraayenbrink*, the Ninth Circuit merely "ratified the district courts' use of discretion . . . to supplement the record" under the pre-existing narrow exceptions to record review, a "far cry" from authorizing district courts to "engage in de novo review," or rendering "the APA's standards an inapt guidelines." *Sierra Club v. McLerran*, No. C11-1759RSL, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6, 2012); *see also WildEarth Guardians v. U.S. Forest Serv.*, No. CV-10-00385-TUC-DCB, 2011 WL 11717437, at *1 (D. Ariz. Apr. 26, 2011) (denying discovery and supplementation based on claimed "new standard announced in *Kraayenbrink*.")

Response (Doc. 54, p. 16).

As summarized by another district court, *Kraayenbrink* has not been consistently applied:

> Indeed, district courts in this circuit appear somewhat split as to the broader implications of *Washington Toxics* and *Kraayenbrink*. *See Wildearth Guardians v. U.S. Forest Serv.*, No. CV-10-00385-TUC-DCB, 2011 WL 11717437, at *1 *2 (D. Ariz. Apr. 22, 2011) (noting *Kraayenbrink* "represents a sharp departure from the traditional rule of limiting the scope of review of agency action to the agency record," but acknowledging that "claims brought under the citizen suit provision of the ESA may not be subject to the same rules as those brought under the APA"); *Sierra Club v. McLerran*, No. C11-1759RSL, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6,

2012) (finding the Ninth Circuit merely "ratified the district courts' use of discretion ... to supplement the record" in *Washington Toxics* and *Kraayenbrink*, and noting "it is a far cry to state that those cases require a district court to engage in de novo review of the record, or that the APA's standards are inapt guidelines"); *All. for Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1177 (D. Mont. 2013) ("*Kraayenbrink* leaves us uncertain whether the panel discarded the APA record review rule entirely or simply found that the extra-record documents presented to the district court in that case fit within one of the four standard exceptions outlined [by Lands Council]. The better view, in the opinion of this Court, is that the traditional four exceptions still apply to plaintiffs' requests for supplementation of the administrative record for ESA claims, but the narrowness of the construction and application of these exceptions . . . should be relaxed for such claims"); *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 384 F. Supp. 3d 1111, 1119 (N.D. Cal 2019) (noting "[a] few courts appear on occasion to have afforded a broader consideration of extra-record materials in ESA disputes," but finding "the material in the administrative record is sufficient to resolve the cross-motions without resort to external materials"); *but see Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, 992 F. Supp. 2d 1095, 1106 (D. Or. 2014) (noting a claim arising under the ESA's citizen-suit provision "is evaluated with any admissible evidence and is not limited to the administrative record"); *Nw. Coal. For Alternatives to Pesticides v. EPA*, 920 F. Supp. 2d 1168, 1174–75 (W.D. Wash. 2013) (considering extra-record evidence in a "failure to act" case brought under the ESA, and rejecting arguments that *Kraayenbrink* and *Washington Toxics* did not apply); *Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, No. CV 10-863-PHX-MHM, 2011 WL 905656 (D. Ariz. Mar. 15, 2011) (explaining that, in *Kraayenbrink*, the Ninth Circuit "stated unequivocally that the scope of review for ESA citizen-suit claims is not provided for by the APA and as a result parties may submit and the court may consider evidence outside the administrative record," and distinguishing between the scope of review and the standard of review); *Conservation Congress v. U.S. Forest Serv.*, 2017 WL 4340254, at *1–*2 (E.D. Cal. Sept. 29, 2017) (finding that "there can be no question that the Court in this case 'may consider evidence outside the administrative record' " for the limited purpose of reviewing the plaintiff's ESA citizen-suit claims, and rejecting the defendant's argument that review under the arbitrary and capricious standard requires the scope of review to adhere to the administrative record).

*NW. Envtl. Advocates v. United States Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *13 (D. Or. Dec. 20, 2019).

Post-*Kraayenbrink*, the Ninth Circuit has stated that an "agency's compliance with the ESA is reviewed under the [APA]." *Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012). However, just as the *Washington Toxics* and the *Kraayenbrink* courts do not discuss case law which reaches contrary conclusions, the *Karuk* court does not discuss *Washington Toxics* or *Kraayenbrink* in concluding that an agency's compliance with the ESA is reviewed under the APA. As *Karuk* is consistent with Supreme Court and Ninth Circuit authority, *see e.g. United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) (consideration is to be confined to the administrative record where Congress

has not set forth the standards to be used or the procedures to be followed, but has simply provided for review of agency decisions); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1193-94 (9th Cir. 2000) (rejecting *de novo* review of agency action absent clear Congressional intent in its favor), the Court finds the Ninth Circuit merely "ratified the district courts' use of discretion . . . to supplement the record" in *Washington Toxics* and *Kraayenbrink*, rather than determining the APA's standards are inapt guidelines and requiring a district court to engage in *de novo* review of the record. *McLerran*, No. C11-1759RSL, 2012 WL 5449681, at *2.

In light of the contradictory authority, the Court finds the method set forth in *Kruger* to be well-taken. In other words, "the traditional four exceptions still apply to plaintiffs' requests for supplementation of the administrative record for ESA claims, but the narrowness of the construction and application of these exceptions . . . should be relaxed for such claims." *Kruger*, 950 F. Supp. 2d at 1177, *citations omitted*.

III. *Nature and Scope of the Issues Before the Court*

Plaintiffs argue that whether a southern border enforcement program exists is a merits question separate from the proper scope of the administrative record. The government argues, however, that "[i]n order to determine the proper scope of the Administrative Record in this case, it is first necessary to determine the nature and scope of the decisions challenged by [Plaintiffs]." *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1272 (D.Colo. 2010); *cf. Doe 1 v. Nielsen*, No. 18-CV-02349-BLF(VKD), 2018 WL 4266870, at *2 (N.D. Cal. Sept. 7, 2018) ("[D]iscovery of the nature of the agency action issue is necessary in order for the parties and the Court to determine the scope of the administrative record to be produced.").

The government argues Plaintiffs are attempting to collect documents to support a legally impermissible programmatic challenge. *See e.g. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990). Further, Defendants assert there is no southern border enforcement program. *See e.g.* First Hass Decl., ¶ 11. In fact, Defendants assert "DHS has never adopted

a planning document governing the universe of its southern border enforcement activities (nor is there any statute requiring that it do so)[.]" Response (Doc. 54, p. 9), *citing* First Hass Decl. ¶ 62. As another district court summarized:

> [T]he decision whether a set of agency actions is a "program" for which NEPA analysis is required is left to the agency's discretion. *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976). A court cannot order an agency under the APA to perform a discretionary act. *Norton*, 542 U.S. at 63-64. A court can only compel a legally required, non-discretionary act. *Id.* Judicial review of DHS' determination not to conduct a PEIS is therefore not appropriate.

*Whitewater Draw Nat. Res. Conservation Dist. v. Nielsen*, No. 3:16-CV-02583-L-BLM, 2018 WL 4700494, at *5 (S.D. Cal. Sept. 30, 2018). However, the government's historical agencies (DoD and INS) prepared a 1994 PEIS and a 2001 SPEIS. At this stage, the Court does not necessarily accept Defendants' assertion a southern border enforcement program was not formerly in place. *See e.g. Concerned About Trident v. Rumsfeld*, 555 F.2d 817, 825 (D.C. Cir. 1976) ("We note first of all that it would be a highly artificial and superficial rule which would look merely to the label attached to a project, program, etc. for its application. As the Supreme Court has recently stated, it is the cumulative environmental impacts of a plan which require a comprehensive impact statement . . . We must therefore shift our focus from the label to the facts of this case and compare them to those cases where we have required a 'program' EIS."). In presenting the issues to the Court, neither Defendants nor Plaintiffs have provided the Court with any authority as to what review is appropriate as to a decision to not prepare a SPEIS in these circumstances. In this case, therefore, the Court finds it is not appropriate to determine the scope of the issues prior to deciding whether to expand the Administrative Record. Although Defendants assert a southern border enforcement program does not currently exist and has not existed, the Court recognizes the Complaint alleges a number of discrete, discretionary actions to enforce border security. As the Court previously stated:

> Defendants have not yet shown that they conducted a 'hard look' to determine whether they had a duty to supplement the 2001 SPEIS, or that the agency no longer uses the 2001 SPEIS to justify actions. *See Nevada v. Dep't of Energy*, 457 F.3d 78, 93 (D.C. Cir. 2006) (recognizing that an agency's actions must comport with the "rule of reason").

November 2, 2018, Order (Doc. 40, p. 4). It is in this context the Court will consider Plaintiffs' requests.

IV. *Administrative Record*

Judicial review of an agency decision is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The administrative record is not just "those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989), *citation omitted*. Rather, it must be "the whole record," which "includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted). In fact, an agency may not "exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006). In other words, the "whole record" encompasses "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555, *citation omitted*.

However, the administrative record before an agency does not include "every scrap of paper that could or might have been created." *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013), *quoting TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002)). Further, an agency's designation and certification of the administrative record as complete is entitled to a "presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007), *citing Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). While a court presumes an administrative record is complete, plaintiffs can rebut this presumption with "clear evidence to the contrary." *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017), *citing Bar MK Ranches*, 994 F.2d at 740), *vacated on other grounds*, ––– U.S. ––––, 138 S. Ct. 443 (2017).

Additionally, a court may permit supplementation of the record (1) if the admission

- 8 -

is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). However, to not undermine the general rule, "the scope of these exceptions . . . is constrained[.]" *Id.*

V. *Motion to Complete the Record*

Plaintiffs seek to have the administrative record completed with the addition of NEPA Documents Tiering to the 1994 PEIS and/or 2001 SPEIS, Internal Memoranda, Internal or External Communications, Drafts of Decision Documents, and Other Agency Records, Documents Outside of the April 12, 2011, to April 12, 2017, Timeframe, and Documents Related to JTF-6 Support. The parties agree to the inclusion of some of the documents.

A. *NEPA Documents Tiering to the 1994 PEIS and/or 2001 SPEIS*

Plaintiffs assert their claims seek supplementation of programmatic analyses. This includes CBP NEPA analyses relying upon or tiering to the 1994 PEIS and 2001 SPEIS. Defendants assert, however, that these documents are not relevant because "there is no program, because Plaintiffs cannot bring a wholesale challenge to CBP's enforcement-related activities under NEPA, and because the 1994 PEIS and 2001 SPEIS have been withdrawn." Response (Doc. 54, p. 9). However, as previously discussed, this case presents the issues of whether review of the agency's decision is appropriate and, if so, whether Defendants failed to complete a required non-discretionary act. Consideration of NEPA documents tiering to the 1994 PEIS and/or the 2001 SPEIS are relevant to this inquiry. Indeed, these documents may have "directly or indirectly [been] considered by agency decision-makers and include[] evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555. The Court will direct Defendants to include these documents, if they exist, in a completed Administrative Record.

B. *Internal Memoranda, Internal or External Communications, Drafts of Decision Documents, and Other Agency Records*

In effect, Plaintiffs assert these requested documents would likely have contributed to the cessation of Defendants' treatment of the southern border enforcement as a program. Plaintiffs assert these documents are specifically identified and "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Pritzker*, 2017 U.S. Dist. LEXIS 96067, at *5 (N.D. Cal. June 21, 2017).

The government asserts such documents do not exist. Second Hass Decl. However, Plaintiffs assert the First Hass Decl. references internal, deliberative communications not included in the record. *See* Motion (Doc. 50, p. 6). Additionally, Plaintiffs point to "a heavily redacted October 10, 2008 memorandum and decision cancelling the Arizona PEIS due to "'legal deficiencies'" and the inability of the agency "'to extensively revise the PEIS to achieve an acceptable level of legally [sic] sufficiency.'" Motion (Doc. 50), *citing* Ex. I.B1-B2 (Doc. 50-2).

However, the references in the First Hass Decl. do not necessarily refer to any specific document or written communications. Further, documents that are predecisional and deliberative may be shielded by the deliberative process privilege. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir.1988) (describing the doctrine in the FOIA context). This privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984). It "was developed to promote frank and independent discussion among those responsible for making governmental decisions[.]" *See id.*, *citing Envtl. Protection Agency v. Mink*, 410 U.S. 73, 87 (1973) (quoting legislative materials stating that "it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny"). However, as the deliberative process privilege is a qualified privilege, an agency must nevertheless disclose

- 10 -

covered documents if the litigant's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Nat'l Wildlife Fed'n*, 861 F.2d at 1117, *citing U.S. v. Legett & Platt., Inc.*, 542 F.2d 655, 658 (6th Cir.1976), cert. denied, 430 U.S. 945 (1977); *U.S. v. Amer. Tel. & Tel. Co.*, 524 F.Supp. 1381, 1386 n. 14 (D.D.C.1981)). "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding policies and decisions." *Id.*, *citations omitted*.

Under the APA's "arbitrary and capricious" standard, a court "will not vacate an agency's decision unless it 'has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a different view or the product of agency expertise.'" *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007), *citation omitted*. Documents disclosing information before Defendants regarding the environmental impact of Defendants' actions and the adequacy of mitigation measures and special conditions may be relevant to Plaintiffs' claims. As previously discussed, the parties have not presented the Court with any authority as to what review is appropriate as to a decision to not prepare a SPEIS in the circumstances presented in this case. It has not been shown, therefore, whether such material is relevant in this case. The Court finds this factor does not weigh either in favor of or against disclosure.

It is not clear what is included in the redactions. However, it is presumably something unique or otherwise there would be no reason for Defendants to redact the material. Therefore, it does not appear this information is available elsewhere. The Court finds this factor weighs in favor of disclosure.

"The fact that a government entity's action is the focal point of litigation weighs against upholding the deliberative process privilege." *Thomas v. Cate*, 715 F.Supp.2d 1012, 1028 (E.D.Cal. 2010) (collecting cases); *see also In re Subpoena Duces Tecum Served on*

*Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C.Cir.1998) (noting that "the privilege was fashioned in cases where the governmental decision-making process is collateral to the plaintiff's suit"); *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279–80 (D.C.Cir.1998). Thus, that government entities are Defendants in this litigation weighs against upholding the deliberative process privilege in this case.

As to the effect of the disclosure, the privilege "was developed to promote frank and independent discussion among those responsible for making governmental decisions[.]" See *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984), *citing Envtl. Protection Agency v. Mink*, 410 U.S. 73, 87 (1973). Therefore, if disclosure of the privileged documents would hinder that frank and independent discussion, it would weigh heavily against disclosure. *See id.* 1161–62. Compelled disclosure of information revealing the mental process of Defendants as they worked toward their decision to not conduct another SPEIS would "chill frank discussion and deliberation in the future among those responsible for making governmental decisions" in this context. *Id.* at 1162. Operating in a "fishbowl," agency officials might skirt around or sterilize their discussions of the more difficult or controversial issues, in order to avoid criticism if they later approve the permit. *See Nat'l Ass'n of Home Builders*, 551 U.S. at 658–89 (agencies are "fully entitled" to "change[ ] their minds" during the decisionmaking process). Such sterilization would certainly harm the quality of agency decision-making, thwarting the objective of the deliberative process privilege. *See NLRB*, 421 U.S. at 150 ("the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions"). The Court finds this factor weighs against disclosure.

While "[t]he availability of other evidence 'is perhaps the most important factor in determining whether the deliberative process privilege should be overcome.'" *Thomas*, 715 F.Supp.2d at 1043, *quoting North Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1124 (N.D.Cal.2003), the relevance of the documents is unknown. When considered with the understanding that "forced disclosure of predecisional deliberative communications can

have an adverse impact on government decision-making[,]" *Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 383 (N.D. Cal. 2017), the Court finds Plaintiffs' "need for the materials and the need for accurate fact-finding [does not] override the government's interest in non-disclosure." *See Nat'l Wildlife Fed'n*, 861 F.2d at 1117, *internal citation omitted*. The balancing of the factors tips in favor of upholding the deliberative process privilege for predecisional and deliberative documents. To the extent any requested documents in the possession of Defendants are predecisional and deliberative, they need not be disclosed or unredacted.

C. *Documents Outside of the April 12, 2011, to April 12, 2017, Time Frame*

The administrative record provided by Defendant includes "documents within a six-year timeframe because it is commensurate with the six-year statute of limitations that is applicable to Plaintiffs' [FAC]." First Hass Decl. ¶ 74. Plaintiffs argue, however, that "there are numerous NEPA documents relying on or tiering to the 1994 PEIS and/or 2001 SPEIS, as well as deliberative documents that were prepared outside of Defendants' 2011 to 2017 timeframe and that are properly included within the whole administrative record." Motion (Doc. 50, p. 7). Further, Plaintiffs assert Defendants' time frame is arbitrary "for a legal challenge involving a 1994 PEIS and 2001 SPEIS (as well as CBP's March 29, 2019 decision withdrawing those documents.)." *Id*. Because APA failure-to-act claims may not be subject to a six-year statute of limitations, *Pub. Citizen, Inc. v. Mukasey*, No. C08-0833MHP, 2008 WL 4532540, at *9 (N.D. Cal. Oct. 9, 2008), the Court finds inclusion of documents in the Administrative Record before the 2011 to 2017 time frame to be appropriate. Accordingly, Defendants shall include documents before this time frame that were "before the agency pertaining to the merits of its decision[,]" *Portland Audubon Soc'y*, 984 F.2d at 1548, including their conclusion not to act and continuing failure to act. The Court finds documents after that time frame are not relevant.

D. *Documents Related to JTF-6 Support*

Plaintiffs argue Defendants' lodged administrative record is also incomplete due to its failure to include any information regarding the ongoing support of the CBP southern border enforcement program by JTF-6. Defendants assert, however, that the focus of the 2001 SPEIS "was to examine the potential impacts of JTF-6 actions and activities over a finite, five-year period." First Hass Decl. ¶ 19. Defendants further assert they "are not aware of, and do not believe that there are any DHS and CBP documents concerning the agencies' decision not to perform a programmatic ESA consultation covering activities assisted by JTF-6, let alone the entire universe of their southern border enforcement activities. Second Hass Decl. ¶¶ 14–16.

Plaintiffs point out that, not only have Defendants failed to include any post-2006 documents related to JTF-6 support activities, but they have failed to include any documents regarding JTF-6 actions taken in reliance upon or in implementation of the SPEIS. In other words, there are "no documents provided in the 2001-2006 time period for JTF-6 support activities, which according to Defendants, is the sole focus of the 2001 PEIS." Motion (Doc. 50, p. 8). Plaintiffs also point to news articles that indicate JTF-6 continues to conduct missions along the southwest border.

Defendants argue, however, that such documents are rightly not included in the Administrative Record because they are irrelevant. For example, they demonstrate JTF-6's day-to-day activities surveying, designing, and constructing roads. Defendants argue Plaintiffs may not simply collect documents to support a legally impermissible programmatic challenge. *Lujan*.

However, as the Court has previously stated, this case presents unusual circumstances in which it is not clear whether a program existed and the parties have not presented any authority as to what review, if any, is appropriate. The Court finds, therefore, that JTF-6 documents that precede April 12, 2017, may be relevant.

VI. *Motion to Supplement the Administrative Record with Extra-Record Evidence*

Plaintiffs point to Defendants's extra-record declarations, *see e.g.,* Hass Declarations, and argues parity requires consideration of extra-record evidence submitted by Plaintiffs. *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 511-12 (9th Cir. 1997) (upholding district court consideration of extra-record material because "the court permitted both sides to submit supplemental evidence"); *NW. Coal. v. United States EPA*, 920 F. Supp. 2d 1168, 1176 (W.D. Wash. 2013) ("The Court agrees that all parties should have an equal opportunity to present extra-record evidence in support of their position. However, a party may only supplement the record with evidence that is relevant to the question of whether relief should be granted."). Further, Defendants argue the documents Plaintiffs seek to include are not relevant.

The Court agrees extra-record evidence *that is relevant* should be included. In the event the Court finds a southern border enforcement program previously existed, documents that precede April 12, 2017, which show the changes to the program and the impact of those changes will be relevant to the Court's review. Accordingly, the Court finds the Administrative Record should be supplemented with documents regarding the CBP road network and CBP daily operations (including off-road vehicle patrols).

VII. *Request for Judicial Notice*

Plaintiffs request the Court take judicial notice of "twenty-seven (27) Federal Register final rules issued by the United States Fish and Wildlife Service since the 2001 SPEIS, designating or revising critical habitat for threatened or endangered species within the 50-mile border zone considered in the 1994 PEIS and 2001 SPEIS." Motion (Doc. 50, p. 13); *see also* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number."); *United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003) ("Far from abusing its discretion, the district court complied with federal law by judicially noticing the rule.").

Defendants assert the normal limitations of judicial review under the APA to the administrative record apply to a request for judicial notice. *Rybachek v. EPA*, 904 F.2d 1276, 1296, n.25 (9th Cir. 1990) (treating a request for judicial notice as a motion to supplement the record and applying the limited exceptions to record review). [4]

Further, Defendants argue the "notices do not support or establish any entitlement to mandated programmatic NEPA or ESA consultation covering the entire universe of DHS and CBP's southern border enforcement activities, and therefore are not relevant to the relief requested." Response (Doc. 54, p. 16). However, the description of the documents seems to indicate their admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision[,]" *Lands Council*, 395 F.3d at 1030, and may be relevant to whether relief should be granted, *WildEarth Guardians*, 2014 WL 12729290 at *2.

The Court will take judicial notice of the documents, should they be cited or provided to the Court, if they contain "facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Cal. Sportfishing Prot. Alliance v. Shiloh Grp.*, 268 F. Supp. 3d 1029, 1038-39 (N.D. Cal 2017).

Accordingly, IT IS ORDERED:

1. The Motion to Complete the Administrative Record; Motion to Supplement the Administrative Record with Extra-Record Evidence; and Request for Judicial Notice ("Motion") (Doc. 50) is GRANTED IN PART AND DENIED IN PART. The Motion is DENIED AS MOOT as to documents previously disclosed or included in the Administrative Record and DENIED as to documents that do not exist.

2. Defendants shall take the following actions to complete the administrative record, with documents prepared prior to April 12, 2017, to the extent they do not include

---

[4] As the specific 27 notices have not been identified or provided, the Court has not reviewed these documents.

predecisional and deliberative communications:

    a. Add complete and true copies of the NEPA documents identified as Exhibits I.A-1 through I.A-6 to the administrative record;

    b. Add complete and true copies of the agency records identified as Exhibits I.B1 and I.B2 to the administrative record;

        1. Add complete and true copies of all additional internal memoranda, internal or external communications, draft of decision documents, and other agency records which were directly or indirectly considered by CBP in its decision not to supplement the 1994 PEIS and 2001 SPEIS, to the administrative record;

    c. Add complete and true copies of agency records related to JTF-6 identified as Exhibits I.D1 and I.D2 to the administrative record;

        1. Add complete and true copies of all additional agency records related to JTF-6 which were directly or indirectly considered by CBP in its decision not to supplement the 1994 PEIS and 2001 SPEIS, to the administrative record;

    d. Add complete and true copies of agency records produced before the April 12, 2011 to April 12, 2017 timeframe which were directly or indirectly considered by CBP in its decision not to supplement the 1994 PEIS and 2001 SPEIS, to the administrative record.

    e. The Motion is DENIED as to predecisional and deliberative documents or portions thereof. To the extent Defendants withhold all or portions of any document within the administrative record (e.g., as predecisional and deliberative), Defendants shall produce a privilege log.

3. The Administrative Record may be supplemented with Exhibits II.A1 through II.A5.

4. Plaintiffs may cite to and incorporate during cross-motions for summary judgment the twenty-seven (27) Federal Register final rules issued by the US. Fish and Wildlife

Service since the 2001 SPEIS, designating or revising critical habitat for threatened or endangered species within the 50-mile border zone considered in the 1994 PEIS and 2001 SPEIS.

    5. Defendants shall supplement the Administrative Record by April 17, 2020.

    6. Plaintiffs shall have until May 22, 2020, to file a motion for summary judgment.

        a. Plaintiffs' motion for summary judgment shall not exceed 40 pages.

    7. Defendants shall have until June 26, 2020, to file a combined cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment.

        a. Defendants' combined cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment shall not exceed 60 pages.

    8. Plaintiffs shall have until July 31, 2020, to file a combined opposition to Defendants' cross-motion for summary judgment and reply in support of Plaintiffs' motion for summary judgment.

        a. Plaintiffs' combined opposition to Defendants' cross-motion for summary judgment and reply in support of Plaintiffs' motion for summary judgment shall not exceed 40 pages.

    9. Defendants shall have until August 21, 2020, to file a reply in support of their cross-motion for summary judgment.

        a. Defendants' reply in support of their cross-motion for summary judgment shall not exceed 20 pages.

DATED this 16th day of March, 2020.

_____
Cindy K. Jorgenson
United States District Judge